**Electronically Filed**
**Intermediate Court of Appeals**
**29937**
**22-SEP-2011**
**08:04 AM**

NO. 29937


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
GLENN KEOHOKAPU, JR., Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-0905)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Fujise and Ginzoa, JJ.)

Defendant-Appellant Glenn Keohokapu, Jr. (Appellant) appeals from the judgment of conviction and sentence, entered June 22, 2009, by the Circuit Court of the First Circuit (circuit court).[1]  A jury found Appellant guilty of manslaughter, in violation of Hawaii Revised Statutes (HRS) § 707-702(1)(a) (Supp. 2010), for stabbing Steven Wilcox during a fight at a Kāne'ohe night club on June 7, 2008.  After sentencing hearings, the jury found that (1) Appellant was a persistent offender under HRS §706-662 (Supp. 2010),[2] and that (2) "it is necessary for the

---

[1]    The Honorable Virginia Lea Crandall presided.

[2]    HRS § 706-662 reads now, as it did then:

**Criteria for extended terms of imprisonment.**  A defendant who has been convicted of a felony may be subject to an extended term of imprisonment under section 706-661 if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public and that the convicted defendant satisfies one or more of

(continued...)

protection of the public to subject [Appellant] to an extended term of imprisonment[.]" Pursuant to HRS § 706-661 (Supp. 2010),[3] the circuit court sentenced Appellant to an extended term of life in prison with the possibility of parole and ordered him to pay restitution.

Appellant claims that the circuit court erred (1) during jury selection, by denying a defense motion to strike jurors who had been exposed to pre-trial publicity and "by reading the entire venire a pretrial publicity statement which suggested that the decedent was 'a good Samaritan'"; (2) during the sentencing hearing, by admitting into evidence testimony under the "present recollection refreshed" and "past recollection recorded" exceptions to the hearsay rule; (3) by allowing the prosecutor's rebuttal argument during the sentencing hearing to "misstat[e] the law and attempt[] to inflame the jury with sympathy for the decedent;" and (4) by instructing the jury on parole and the Hawaiʻi Paroling Authority.

------

(...continued)
the following criteria:

(1) The defendant is a persistent offender in that the defendant has previously been convicted of two or more felonies committed at different times when the defendant was eighteen years of age or older[.]

[3] HRS §706-661 reads now, as it did then:

**Extended terms of imprisonment.** The court may sentence a person who satisfies the criteria for any of the categories set forth in section 706-662 to an extended term of imprisonment, which shall have a maximum length as follows:

. . . .

(2) For a class A felony--indeterminate life term of imprisonment;

. . . .

When ordering an extended term sentence, the court shall impose the maximum length of imprisonment. The minimum length of imprisonment for an extended term sentence under paragraphs (2), (3), and (4) shall be determined by the Hawaii paroling authority in accordance with section 706-669.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties and the relevant law, we resolve Appellant's points of error as follows:

(1) The circuit court did not abuse its discretion during jury selection proceedings, including its decision to deny Appellant's motion to strike all prospective jurors who had heard any media account of the incident. See State v. Altergott, 57 Haw. 492, 499-500, 599 P.2d 728, 733-34 (1977).

The constitutional guarantee of a right to a trial by an impartial jury requires that the jury be "substantially free from the biasing effects of inflammatory pre-trial publicity." State v. Pauline, 100 Hawaiʻi 356, 366, 60 P.3d 306, 316 (2002) (internal quotation marks omitted) (quoting State v. Pokini, 55 Haw. 640, 641, 526 P.2d 94, 99 (1974)). Once an accused claims that his or her right to a fair trial has been jeopardized by "outside influences infecting a jury," i.e., publicity in the news media, the court must determine "whether the nature of the outside influences rises to the level of being substantially prejudicial." State v. Okumura, 78 Hawaiʻi 383, 394, 894 P.2d 80, 91 (1995) (quoting State v. Williamson, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991)). "If it does not rise to such a level, the trial court is under no duty to interrogate the jury." Id. See also State v. Samonte, 83 Hawaiʻi 507, 531-32, 928 P.2d 1, 25-26 (1996). However, if the court is satisfied that there is "so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial," the court must, upon the defendant's motion, transfer the proceeding to another circuit. Hawaiʻi Rules of Penal Procedure (HRPP) Rule 21(a).

Although Appellant implies that there should have been a "presumption of prejudice" applied in this case, there is nothing in the record suggesting that media reports saturated the public to an extent warranting that presumption. See Pauline, 100 Hawaiʻi at 365-66, 60 P.3d at 315-16 (citing Ainsworth v.

3

Calderon, 138 F.3d 787, 795 (9th Cir. 1998) (citation omitted) (explaining that, in support of motion to transfer venue, prejudice may be presumed where defendant demonstrates that "the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime")). The Hawai'i Supreme Court will presume that media reports have produced so much prejudice only in "extreme situations." Id. at 366, 60 P.3d at 316 (quoting State v. Kauhi, 86 Hawai'i 195, 200, 948 P.2d 1036, 1041 (1997)).

The circuit court stated that there was "some publicity with respect to this case", and from the fact that the court conducted further inquiry, we infer that the court found the media reports were "substantially prejudicial" but not so saturating that a "presumption of prejudice" arose. The level of prejudice arising from media reports is "ordinarily a question committed to the trial court's discretion." See Okumura, 78 Hawai'i at 394, 894 P.2d at 91 (citation omitted). Nothing in the record supports a conclusion that the circuit court abused its discretion in its implied finding that publicity was "substantially prejudicial" but not presumptively so.

Once the court determines that media coverage is "substantially prejudicial," the court has a duty to examine potential jurors. Id. at 394, 894 P.2d at 91. "The scope of the examination should vary, of course, with the extent, quality, and timing of pre-trial publicity present in each case." Pokini, 55 Haw. at 642, 526 P.2d at 99; see also Pauline, 100 Hawai'i at 367-68, 60 P.3d at 317-18; Skilling v. United States, ___ U.S. ___, ___, 130 S. Ct. 2896, 2949 (2010) ("In selecting a jury, a trial court must take measures adapted to the intensity, pervasiveness, and character of the pretrial publicity and community animus. Reviewing courts, meanwhile, must assess whether the trial court's procedures sufficed under the circumstances to keep the jury free from disqualifying bias.").

First, the circuit court must ask "whether any jurors 'had read or heard' the prejudicial publicity[.]" State v.

Keliiholokai, 58 Haw. 356, 358, 569 P.2d 891, 894 (1977) (citation omitted).[4] Those that had, should "be examined, individually and outside the presence of other jurors to determine the effect of the publicity." Id. The circuit court did that here.

Second, the court must probe jurors as to whether they can be fair and impartial. See Pokini, 55 Haw. at 643, 526 P.2d at 100. In addition to asking jurors whether they could view evidence impartially despite whatever information they already knew of the alleged crime, a trial court must conduct an objective inquiry into the prospective jurors' potential biases and ascertain "*what* information that the jurors had accumulated." Id. (citing Silverthorne v. United States, 400 F.2d 627, 638 (9th Cir. 1968)). This so-called "content questioning" exceeds what is required by the federal constitution. See Mu'Min v. Virginia, 500 U.S. 415, 427 & 431 (1991).

The circuit court and the parties here engaged in content questioning. The court conducted a "'thorough-going examination of veniremen who indicated they had been exposed' to negative publicity[.]" Pauline, 100 Hawai'i at 369, 60 P.3d at 319 (quoting Pokini, 55 Haw. at 643, 526 P.2d at 100). As in State v. Mark, "[t]he court's thorough voir dire protected [Appellant] from the effects of publicity about the case, and established an 'objective' record concerning the effect of publicity on potential jurors." 120 Hawai'i 499, 520, 210 P.3d 22, 43 (App. 2009). "That record demonstrates that although many potential jurors knew about the case, the circuit court was able to identify and excuse those jurors whose ability to be fair and impartial had been affected." Id.

We disagree with Appellant's contention that the whole jury pool was tainted by the circuit court's reading of a

---

[4] "Although . . . Keliiholokai dealt with outside influences occurring after trial had begun, [its] admonitions are similarly applicable to outside influences occurring prior to or during jury selection." Okumura, 78 Hawai'i at 393, 894 P.2d at 90.

pretrial publicity statement which said that "Wilcox was described in the media as a good samaritan." Initially, we note the record does not reveal an objection to the reading of this statement. When the statement is compared with the facts presented at trial, "there is no indication that [the media description of Wilcox] so prejudiced [Appellant's] rights as to make a fair trial impossible." Wentz v. State, 766 N.E.2d 351, 357 (Ind. 2002). Even if we were to assume the pretrial publicity statement was prejudicial, we do not find it to be plainly erroneous because defense counsel repeatedly asked jurors in voir dire what they thought of the Good Samaritan characterization. See State v. Rodrigues, 113 Hawai'i 41, 51, 147 P.3d 825, 835 (2006) (refusing to find plain error where "the appellant's attorney intentionally elicited the same testimony on cross-examination" that he complains of on appeal) (internal quotation marks and citation omitted). We find no plain error here.

Appellant raises a claim for the first time in his opening brief's argument section that the formulation of the publicity statement violated his "right to be present during all stages of trial." The argument is deemed waived. State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.").

(2) Appellant argues that the circuit court erred during the sentencing hearing by admitting testimony based on witness statements included in police reports: a statement that Appellant's wife Kauilani (Kaui) made to police in April 1996; a statement Kaui made to police in July 1996; a statement Kaui made to police in October 1994; and a statement that Gregory Balga made in October 1993. Kaui's testimony regarding the 1996 statements to police were admissible, but the older statements should have been excluded as they did not fall within an exception to the hearsay rule.

The circuit court admitted Kaui's testimony based on her April 1996 statement to police as a refreshed recollection under Hawaii Rules of Evidence (HRE) Rule 612. "When used to refresh the witness's present recollection, a writing is solely employed to jog the memory of the testifying witness." State v. Dibenedetto, 80 Hawai'i 138, 144, 906 P.2d 624, 630 (App. 1995). If the writing does not refresh the witness's memory, the witness may not testify about or read the contents of the writing into evidence unless the writing is itself admitted under another evidence rule. State v. Espiritu, 117 Hawai'i 127, 137, 176 P.3d 885, 895 (2008). Appellant appears to argue that Kaui read the statement rather than testified from memory. However, the transcript does not indicate as much. The State asked Kaui whether the April 1996 statement refreshed her memory and Kaui responded that it had. Given that Appellant did not object once Kaui stated her memory was refreshed, admission of the testimony will not constitute ground for reversal. See State v. Naeole, 62 Haw. 563, 570, 617 P.2d 820, 826 (1980).

Appellant objects to the admission of Kaui's testimony regarding a July 1996 statement to police and Balga's handwritten statement to police under HRE 802.1(4), the past recollection recorded exception to the hearsay rule. HRE Rule 802.1(4) defines a past recollection recorded as a

> memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

The primary concern here is whether the statements were accurate when Kaui and Balga made them. The commentary to Rule 803(5) of the Federal Rules of Evidence (FRE)[5] acknowledges that "[n]o attempt is made in the exception to spell out the

_____

[5]     FRE Rule 803(5) is identical to HRE Rule 802.1(4). State v. Bloss, 3 Haw. App. 274, 278, 649 P.2d 1176, 1179 (1982); see also commentary to HRE Rule 802.1(4). When the HRE rule is identical to a FRE rule, "we may refer to federal case law for assistance in construing our Rule." State v. Jhun, 83 Hawai'i 472, 478, 927 P.2d 1355, 1361 (1996) (brackets omitted).

method of establishing . . . accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." Fed. R. Evid. 803(5) advisory committee's notes.

> The witness may testify either that he remembers making an accurate recording of the event in question which he now no longer sufficiently remembers, that he routinely makes accurate records of this kind, or, if the witness has entirely forgotten the exact situation in which the recording was made, that he is confident from the circumstances that he would not have written or adopted such description of the facts unless that description truly described his observations at the time.

30B Michael H. Graham, Federal Practice and Procedure: Evidence § 7046 at 489-91 (2006); see also 5 Joseph M. McLaughlin, Weinstein's Federal Evidence § 803.07[3][c], at 803-52 (2d ed. 2011). "At the extreme, some courts find sufficient testimony that the individual recognizes his or her signature and believes the statement correct because the witness would not have signed it if he or she had not believed it true at the time." 2 Kenneth S. Broun et al., McCormick on Evidence § 283, at 299 (6th ed. 2006).

The State relies on United States v. Porter, in which the Sixth Circuit noted, "[t]he touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness." 986 F.2d 1014, 1017 (6th Cir. 1993) (internal quotation marks omitted) (quoting United States v. Williams, 571 F.2d 344, 349 (6th Cir. 1978)).

> It is not a sine qua non of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration . . . of factors indicating trustworthiness, or the lack thereof.

Id. The government's key witness against Porter, his teenage girlfriend, recanted her written statement made to the FBI. Id. at 1016-17. Although the witness did not testify that the statement was accurate, the Court of Appeals affirmed the district court's finding that there were "sufficient indicia of

trustworthiness to admit portions of the statement" as a past recollection recorded. Id. at 1017.

Unlike the witness in Porter, Kaui did not sign her July 1996 statement under the penalty of perjury. Nevertheless, there exists "sufficient indicia of trustworthiness" given that a HPD officer's report, dated on the same date that Kaui wrote her statement, corroborated Kaui's testimony by describing the injuries she described. On the other hand, no corroborating evidence supports Balga's statement. Although Balga acknowledged that the handwriting and signature on the statement was his, he made no averment that he would not have signed the document if it were inaccurate. The State did not ask Balga whether the statement was correct at the time it was written, apparently relying on Balga's signature below the typewritten attestation that "this statement is true and correct to the best of my knowledge[.]"

One commentator noted that "[a]n assertion of [] accuracy in the acknowledgment line of a written statement or such an acknowledgment made previously under oath is not sufficient." McCormick on Evidence at 299 (citing 4 Mueller & Kirkpatrick, Federal Evidence § 433, at 477-78 (2d ed. 1994) ("no intention to authorize trial by affidavits under this rule")). However, other jurisdictions, citing Porter, consider such an attestation one indicia under a totality of the circumstances test. See, e.g., Polite v. State, 41 So.3d 935, 941 (Fla. Dist. Ct. App. 2010); State v. Alvarado, 949 P.2d 831, 836 (Wash. Ct. App. 1998) (among the circumstances to be considered are "(1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement").

Balga's admission of drug and alcohol use during the period in which the incident occurred casts doubt on the reliability of his statement. But cf. United States v. Edwards, 539 F.2d 689, 692 (9th Cir. 1976) (admitting statement under FRE

803(5) where arresting officer's testimony showed that declarant "although inebriated, was capable of performing the relatively sophisticated mental functions necessary to recall past events"). Unlike Polite, Alvarado, and Edwards, the State offered no testimony to corroborate Balga's prior statement, nor did the circuit court find that the statement bore sufficient indicia of reliability to warrant its admission. Therefore, the State failed to establish the foundation that Balga made the statement "when the matter was fresh in [Balga's] memory and . . . reflect[ed] that knowledge correctly" and the circuit court erred in allowing portions of the statement to be read into evidence. HRE Rule 802.1(4).

We must consider whether the error in allowing this testimony and Kaui's October 1994 statement to the police, which the State concedes was erroneously admitted, was harmless. See State v. Rivera, 106 Hawai'i 146, 165-66, 102 P.3d 1044, 1063-64 (2004) (holding that harmless error doctrine applied to errors implicating sentencing). Under the harmless error standard, the appellate court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Pauline, 100 Hawai'i at 378, 60 P.3d 306 at 328 (internal quotation marks and citation omitted). "If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." State v. Gano, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted).

The record contains competent evidence of Appellant's criminal history, which included twenty convictions for burglary, robbery, promotion of a dangerous drug, domestic violence, and parole violations. An HPD officer also testified that Appellant injured a grocery store employee during a robbery, for which Appellant pleaded guilty. The jury had ample evidence from which to conclude "that an extended term of imprisonment is necessary for the protection of the public." HRS § 706-622. Therefore,

the erroneous admission of Balga's October 1993 statement and Kaui's October 1994 statement to police was harmless beyond a reasonable doubt.

(3) Appellant alleges the State made two improper comments on rebuttal. "Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." State v. McGriff, 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994). As a threshold matter, this court must first determine whether the prosecutor indeed committed misconduct. State v. Kiakona, 110 Hawai'i 450, 458, 134 P.3d 616, 624 (App. 2006).

First, Appellant complains that the prosecutor misstated the law on extended sentencing, by not informing the jury during rebuttal that there must be a necessity to imprison Appellant for the safety of the public. However, when closing arguments are read in their entirety, the prosecutor clearly informed the jury of the two findings required before a defendant can receive enhanced sentencing under § 706-661.

Second, Appellant argues that the prosecutor's rhetorical question, "what chance does [the decedent] have in life" was improper because it diverted jurors' attention from the issues at hand: Appellant's criminal history and whether his extended imprisonment was necessary to protect the public. The defense counsel did not object to the statement at trial, so we review for plain error. See Rodrigues, 113 Hawai'i at 47, 147 P.3d at 831. The State contends the remarks rebutted defense counsel's argument that Appellant "never had a fair chance in life" because his father was abusive. Prosecutors may "respond to comments by defense counsel which invite or provoke response[.]" State v. Mars, 116 Hawai'i 125, 142, 170 P.3d 861, 878 (App. 2007) (internal quotation marks omitted) (quoting People v. Sutton, 631 N.E.2d 1326, 1335 (Ill. App. Ct. 1994)). The California Supreme Court has said that, even before a jury contemplating a death sentence, "it is not misconduct for a

prosecutor to ask the jury to show a defendant the same lack of sympathy the defendant showed the victims." People v. Brady, 236 P.3d 312, 343 (Cal. 2010) (citing People v. Kennedy, 115 P.3d 472 (Cal. 2005)). We read defense counsel's closing statement and the prosecutor's rebuttal in a similar vein and conclude that the prosecutor did not commit misconduct. Given the latitude that prosecutors have on rebuttal, Mars, 115 Hawai'i at 142, 170 P.3d at 878, we are unconvinced that the prosecutor's brief reference to Wilcox affected the "fairness, integrity, or public reputation of judicial proceedings" such that it warrants reversal as plain error. Rodrigues, 113 Hawai'i at 47, 147 P.3d at 831 (internal quotation marks and citation omitted).

(4) Appellant's final argument on appeal is that the circuit court erred in giving two instructions relating to parole. These instructions told the jury that the Hawai'i Paroling Authority would hold a hearing within six months of a person's commitment to custody, after which it would fix the minimum term of imprisonment before the prisoner shall become eligible for parole. The court further told the jury that

> [n]o parole shall be granted unless it appears to the Hawai'i Paroling Authority that there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society.

Appellant argues that the instructions "misled and confused the jury by leading the jury to believe that [Appellant] may serve a shorter sentence than twenty years, if the jury did not impose an extended term of imprisonment." To the contrary, the instructions accurately state the procedures for determining the minimum term of imprisonment, as provided in HRS § 706-669, and clarify that the Hawai'i Paroling Authority, not the jury or the court, would determine the minimum time that Appellant must serve. Thus, the instructions are distinguishable from those held to be erroneous in Lovely v. United States, 169 F.2d 386 (4th Cir. 1948), which Appellant cites, in that the circuit

court's instruction here does not tell the jury how much time Appellant must serve before becoming eligible for parole.

Furthermore, the circuit court instructed the jurors, "You must not discuss or consider the subject of any action that the Hawai'i Paroling Authority may or may not take in your deliberations of the facts at issue in this hearing." A jury is presumed to have followed the court's instructions. State v. Smith, 91 Hawai'i 450, 461, 984 P.2d 1276, 1287 (App. 1999).

For the reasons stated above, the June 22, 2009 judgment of conviction and sentence, entered by the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, September 22, 2011.

Cynthia A. Kagiwada,
for Defendant-Appellant.


James M. Anderson,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

13